[Civ. No. 3533. Second Appellate District, Division One.—June 11, 1921.]

## COUNTY OF LOS ANGELES, Respondent, v. RINDGE COMPANY (a Corporation), et al., Appellants.

[Civ. No. 3533½. Second Appellate District, Division One.—June 11, 1921.]

## COUNTY OF LOS ANGELES, Respondent, v. RINDGE COMPANY (a Corporation), et al., Appellants.

[1] PUBLIC HIGHWAYS—ACQUISITION OF LAND BY COUNTY—METHODS AUTHORIZED.—The provisions of article VI of chapter 2 of title VI of the Political Code, comprising sections 2681 to 2698 thereof, providing a method (commonly known as the "viewer" method) for laying out and establishing public highways, do not purport to be exclusive, and may not be held to be so in view of the express grant of power embodied in subdivision 4 of section 2643 of that code, which confers authority upon boards of supervisors to acquire private lands and rights of way thereover for highway purposes by condemnation proceedings under the general right of eminent domain, and of the even more comprehensive enumeration of the general permanent powers of boards of supervisors contained in section 4041 of that code, by which such boards are expressly authorized "to acquire and take by purchase, condemnation or otherwise land for the uses and purposes of public roads, highways and so forth."

[2] ID.—ERRONEOUS VERDICT—MOTION FOR NEW TRIAL—AUTHORITY OF COUNTY COUNSEL TO CONSENT TO INCREASE.—In an action by the county for the condemnation of land for a public highway the

county counsel, as attorney representing the county, has authority on motion for a new trial to consent to an order increasing the amount of compensation awarded to the defendant by the verdict of the jury due to an error in computing the amount of required fencing of defendant's land along the roadway.

[3] ID. — PUBLIC USE — APPROPRIATION OF PROPERTY — LEGISLATIVE FUNCTION.—When the purpose for which property is sought to be condemned is a public use, the necessity of appropriating any particular property therefor is not a subject of judicial cognizance, but one which appertains to the legislative branch of the government, and the right to so appropriate may be exercised by the state or such subordinate bodies to which by legislative grant the power is intrusted.

[4] ID.—ALLOWANCE OF COMPENSATION—RIGHT OF OWNER TO QUESTION PROCEDURE.—Where the owner of land sought to be condemned by the state for a use declared by the law to be public use is accorded his constitutional right to compensation for the taking, he cannot question the procedure or instrumentalities which the legislature has provided as a means for acquiring the property.

[5] ID.—NECESSITY FOR TAKING—DETERMINATION OF BOARD CONCLUSIVE—CODE PROVISION VALID.—The provision of section 1241 of the Code of Civil Procedure, making the determination of the board of supervisors of a county conclusive evidence of the necessity for taking the land for a public highway, is not obnoxious to any provision of the state or federal constitution.

[6] ID.—DENIAL OF NONSUIT—SUBSEQUENT INTRODUCTION OF EVIDENCE —APPEAL.—An order denying a motion for a nonsuit will not be disturbed on appeal, although the evidence at the close of plaintiff's case was so weak that it might properly have been granted, if upon the trial the defect was overcome by evidence subsequently introduced.

[7] ID.—STRIKING OUT SEPARATE DEFENSE—WHEN NOT ERROR.—In an action by a county to condemn certain lands for use as highways, it is not error to strike out a so-called separate defense of the defendants, where every material issue raised by such defense is raised by the complaint of plaintiff and the answer of the defendants thereto; but conceding such rule to be erroneous, the defendants are not prejudiced thereby where, at the trial of the case, they, without objection or restriction, are afforded every opportunity, of which it avails itself, in offering evidence touching every matter contained in the pleading so stricken out by order of the court.

3. Necessity of taking particular land by eminent domain as a juridical question, notes, 11 L. R. A. (N. S.) 940; 22 L. R. A. (N. S.) 2.

[8] Id.—Highway Ending at County Line—Absence of Connecting Highway.—A county has the power to condemn lands for a highway to the line of an adjoining county, regardless of whether there exists an established highway in the latter county with which to connect its proposed road.

APPEALS from a judgment of the Superior Court of Los Angeles County. Paul J. McCormick, Judge. Affirmed.

The facts are stated in the opinion of the court.

Anderson & Anderson and Nathan Newby for Appellants.

A. J. Hill, County Counsel, and Paul Vallee, Chief Deputy County Counsel, for Respondent.

SHAW, J.—The above-entitled actions were instituted by the county of Los Angeles to condemn certain lands described in the complaints therein for use as highways. In each case an interlocutory judgment as prayed for was rendered for the plaintiff, followed by a final order of condemnation, from which judgment and order so rendered in each case the defendants therein have appealed.

In the first above-entitled case, and which appellants designate the "Main Road" case, the action was to condemn a strip of land from the public highway at a point on the southeasterly boundary line of the Malibu ranch, and through said ranch for a distance of some twenty miles or more to the westerly boundary line of Ventura County. at which point the proposed road terminated upon private land. In the other action, No. 3533½, it was sought to condemn land for a lateral highway beginning at a point on the proposed "Main Road" and running thence easterly, to the east boundary line of the Malibu ranch and terminating likewise upon private lands owned by one Decker, which highway appellants designate as the "Alisos Canyon Road." The questions involved in each case are the same and the ground upon which appellants base their claim for a reversal are identical.

In both cases the proceedings were instituted by a resolution adopted *ex parte* and without a hearing accorded defendants by the board of supervisors of Los Angeles County. Omitting the description, the resolution initiating the pro-

ceeding as to the "Main Road" case (that adopted in the other being of like form and effect) is as follows:

"Whereas, the public necessity and interest of the people of the county of Los Angeles do require that a certain highway be constructed in said county over and across those certain parcels of real property hereinafter described, and for that purpose and for such public use it is necessary that those certain pieces or parcels of real property hereinafter described be acquired by said county by condemnation namely: the following described property located in the county of Los Angeles, state of California, to wit: (Description of forty-foot right of way strip, and also of some 146 side parcels.) . . . excepting so much of said land as is now included within any public highway, alley or lane.

"Further reference is hereby made to said county surveyor's map No. 8070, on which the location of all parcels of land herein described is accurately shown.

"Now, therefore, be it resolved, and it is the finding and determination of this board, that the public interest and necessity require the acquisition by the county of Los Angeles of those certain pieces or parcels of land hereinbefore described for a public purpose, namely: for public highway purposes, and for the construction and completion of a public highway thereover; and

"Be it further resolved, that those certain pieces or parcels of land hereinabove described be condemned for a public purpose, namely, for a public highway and the construction and completion thereof, and the county counsel of the county of Los Angeles is hereby directed to institute proceedings in the Superior Court of the state of California in and for the county of Los Angeles for the condemnation of those certain pieces or parcels of real property hereinabove described for public highway purposes and to take all steps necessary for the condemnation of said pieces or parcels of land in the name of said county"; in accordance with which the county counsel instituted the actions for the condemnation of the parcels of real estate described therein.

Demurrers interposed by the defendants to the complaints were overruled. [1] Appellants insist that such rulings constituted fatal error for the reason that the powers conferred by law upon the board of supervisors to establish

public highways are those *only* embodied in sections of the Political Code numbered 2681 to 2698, inclusive, which procedure therein prescribed is designated the "viewer" method and not infrequently adopted by counties in acquiring lands for highways; hence the resolutions of the board of supervisors authorizing the condemnation suits were not sufficient to confer jurisdiction upon the trial court, from which fact it follows that all proceedings had pursuant to such resolutions were void, including the commencement of the actions and the judgments and orders appealed from. It is unnecessary to enter upon an extended discussion of appellants' voluminous brief and argument in support of this point. Suffice it to say the identical question, involved in the case of *Adamson* v. *County of Los Angeles,* 52 Cal. App. 125, [198 Pac. 52], was decided adversely to appellants by the district court of appeal for the first district, and a transfer of the case denied by the supreme court. In that action Adamson, as a taxpayer, set forth in his complaint the proceedings had and taken by the board of supervisors in the acquisition of the property in question, and, insisting the entire proceedings for condemning the same were unauthorized and void, sought to have the county enjoined from proceeding with construction work in the "Main Road" case. In deciding the case the court said: "The provisions of article VI of chapter 2 of title VI of the Political Code, comprising sections 2681 to 2698 thereof, do not purport to be exclusive, and may not be held to be so in view of the express grant of power embodied in subdivision 4 of section 2643 above quoted, and of the even more comprehensive enumeration of the general permanent powers of boards of supervisors contained in section 4041 of the Political Code by which such boards are expressly authorized 'to acquire and take by purchase, *condemnation* or otherwise land for the uses and purposes of public roads, highways and so forth.' " The contention of appellant in the Adamson case was identical with that here urged; the argument of appellant there was identical with the argument made in the instant cases; and the adverse decision of the court in that case must be deemed determinative of the same question presented in these appeals.

[2] Another alleged erroneous ruling upon which appellants claim a reversal is that the court, upon defendants'

motion for a new trial, denied it upon terms, the effect of which was an exercise by the court of the functions of the jury, by reason of which defendants were deprived of the constitutional right of having a vital element of damage determined by the jury. It appears that, among other things, the jury found it would require 29 miles of fencing to fence the Rindge Company's land along the roadway and that the cost per mile would be $650, aggregating the sum of $18,850. On motion for new trial one of the specifications of error was that the jury improperly determined the number of miles of fencing which would be required, and it being made to appear to the court that, instead of 29 miles, as found by the jury, it would require $31\frac{1}{2}$ miles, the cost of which would be $1,625 more than that found by the jury, the court, as a condition of its order denying the motion for a new trial, made an order requiring that plaintiff consent to the increase in the judgment; whereupon counsel for plaintiff filed a written stipulation consenting to such increase in the amount of defendants' compensation, and thereupon the court made its order denying the motion for new trial. Upon the same contention, based upon the same facts and supported by the same argument made by the same attorneys, the court in the Adamson case, *supra,* held that in an action by a county for the condemnation of land for a public highway the county counsel, as attorney representing the county, has authority on a motion for a new trial to consent to an order increasing the amount of compensation awarded to the defendant by the verdict of the jury due to an error in computing the amount of required fencing of defendant's land along the roadway.

In support of its case plaintiff offered in evidence the resolution, copy of which is hereinbefore set out, together with a minute entry of the board showing that it was adopted by a vote of more than two-thirds of the members thereof. Thereupon plaintiff rested and defendants moved for a nonsuit. The motion was denied, and the ruling is assigned as error.

Section 1241 of the Code of Civil Procedure provides that before property can be taken by condemnation it must appear: ''1. That the use to which it is to be applied is a use authorized by law; 2. That the taking is necessary to such use; provided, when the legislative body of a county

. . . shall, by resolution or ordinance, adopted by vote of two-thirds of all its members, have found . and determined that the public interest and necessity require the acquisition, . . . by such county . . . of any . . . public improvement,' and that the property described in such resolution or ordinance is necessary therefor, such resolution or ordinance shall be conclusive evidence; (a) of the public necessity of such proposed . . . public improvement; (b) that such property is necessary therefore, and (c) that such proposed . . . public improvement is planned or located in the manner which will be most compatible with the greatest public good, and the least private injury.''

Since the resolution declaring the land necessary for the proposed highway was adopted by a two-thirds vote of the members of the board of supervisors, it must, as provided by the statute, be accepted as conclusive evidence of the necessity for taking the property, unless, as claimed by appellants, that as so construed it is unconstitutional. This contention is based upon the claim that the determination of the facts so found by the resolution were in their nature judicial, and since the action of the board in adopting the resolution was had *ex parte* and without notice or hearing given to appellants, the effect of the judgment based thereon was to deprive them of their property without due process of law. That the purpose for which the property was sought to be condemned·is a public use, admits of no question. (Sec. 1238, Code Civ. Proc.) **[3]** When the use is public, the necessity of appropriating any particular property therefor is not a subject of judicial cognizance, but one which appertains to the legislative branch of the government, and the right to so appropriate may be exercised by the state of such subordinate bodies to which· by legislative grant the power is intrusted. See Lewis on Eminent Domain, third edition, sections 369, 595 and 596, Cooley on Constitutional Limitations, page 777, *Secombe* v. *Railroad Co.,* 90 U. S. 108, [23 L. Ed. 67, see, also, Rose's U. S. Notes], *Mississippi etc. Boom Co.* v. *Patterson,* 98 U. S. 403, [25 L. Ed. 206], *Water Works Co.* v. *Burkhart,* 41 Ind. 364, *Lamb* v. *Schottler,* 54 Cal. 319, *Wulzen* v. *Board of Supervisors,* 101 Cal. 15, [40 Am. St. Rep. 17, 35 Pac. 353], and *People* v. *Smith,* 21 N. Y. 595, all of which are authorities in support of the proposition

that, in the absence of constitutional provisions so requiring it—and there are none in this state—the legislature may delegate to the boards of supervisors of the counties of the state the power to determine *ex parte* by resolution, as in the instant cases, the necessity for taking property for public use and make such resolution conclusive evidence of the facts enumerated in section 1241 of the Code of Civil Procedure. In Cooley's Constitutional Limitations, page 760, it is said that "a legislative act declaring the necessity, being the customary mode in which that fact is determined, must be held to be for this purpose 'the law of the land,' and no further finding or adjudication can be essential, unless the constitution of the state has expressly required it." And at page 777 of the same work it is said that, while the question of necessity may be referred to a local tribunal or submitted to a jury to decide upon evidence, "the parties interested have no constitutional right to be heard upon the question, unless the state constitution clearly and expressly recognizes and provides for it." *People* v. *Smith, supra,* is authority for the statement that the legislature "may allow the owner to intervene and participate in the discussion before the officer or board to whom the power of determining whether the appropriation shall be made in a particular case, or it may provide that the officers shall act upon their own views of propriety and duty, without the aid of a forensic contest. The appropriation of the property is an act of public administration, and the form and manner of its performance is such as the legislature shall, in its discretion, prescribe." In the case of *Board of Water Commrs.* v. *Johnson,* 86 Conn. 151, [41 L. R. A. (N. S.) 1024, 84 Atl. 727], the court said: "But the respondents urge that they have never had the opportunity to be heard upon the question of necessity, and that for that reason there has not been due process of law. They were not entitled to such opportunity. It is well settled that, as related to the exercise of the power of eminent domain, all questions which are political in their nature and lie within the legislative province may be determined without notice to the owner of the property affected, and . . . the owner is not entitled to a hearing upon it as a matter of right." In *Wulzen* v. *Board of Supervisors, supra,* it is said: "The determination as to whether or not the right

of eminent domain should be exercised and as to what lands are necessary to be taken in the exercise of that right is a political and legislative question and not a judicial one. Its determination rests exclusively with the legislature, or with such subordinate legislative bodies as it may be properly devolved upon, and the question of whether the exercise of the power is wise or not is one with which the judicial department has no concern." Property is held in private ownership subject to the right of the state in its sovereign capacity to take it for public use; the only restriction upon such right being that it "shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner." (Sec. 14, art. I, Const.) **[4]** Hence, where the owner of land sought to be condemned by the state for a use declared by law to be a public use is accorded his constitutional right to compensation for the taking he cannot question the procedure or instrumentalities which the legislature has provided as a means for acquiring the property. Its motives or reasons for declaring that it is necessary to take the land are no concern of his. **[5]** In our opinion, the provision of section 1241 of the Code of Civil Procedure, making the determination of the board of supervisors of the county conclusive evidence of the necessity for taking the land for a public highway, is not obnoxious to any provision of the state or federal constitution.

**[6]** However this may be, and contrary to the views herein expressed, the trial court agreed with defendants' contention that the resolution was not conclusive evidence of the facts so found, but did admit it as a sufficient *prima facie* showing of such facts, and upon this theory denied the motion for nonsuit. Thereupon, and after the denial of their motion, defendants were given the widest latitude in offering a mass of evidence for the purpose of showing there was no necessity for the proposed highway, followed by plaintiff, which, in rebuttal, introduced a vast deal of evidence likewise touching the question of necessity for the improvement. Indeed, it appears from the voluminous record that no restrictions whatsoever were imposed upon either party in the introduction of evidence touching the question. Under these circumstances and assuming the court erred in accepting the resolution even as *prima facie* evidence, never-

theless we cannot perceive how defendants were prejudiced by the circumstances, since the testimony which, according to appellants' theory, should have been produced during plaintiff's presentation of its case in chief was later in the trial supplied. The error is predicated solely upon the order in which the evidence touching the question was admitted. "It is well settled that an order denying a motion for a nonsuit will not be disturbed, although the evidence at the close of plaintiff's case was so weak that it might properly have been granted, if upon the trial the defect is overcome by evidence subsequently introduced." (*Peters v. Southern Pac. Co.*, 160 Cal. 48, [116 Pac. 400]; *Lowe v. San Francisco etc. Ry. Co.*, 154 Cal. 573, [98 Pac. 678].) Since both parties were permitted, after the ruling upon the motion, to introduce evidence, without restriction, touching the question of necessity, defendants could in no event have been prejudiced by the ruling.

[7] As a separate defense the defendants May K. Rindge and Rindge Company alleged that all of the property which plaintiff sought to condemn was within the boundaries of the Malibu ranch, in Los Angeles County; that while the ranch was owned in severalty by May K. Rindge and the Rindge Company, it was, and had been for more than twenty years, with the knowledge of plaintiff, operated as a single ranch under one management and control; that the westerly end of said proposed highway terminates at and upon the boundary line between Los Angeles County and Ventura County upon the Malibu ranch which, as owned by defendants, extends into Ventura County for a distance of —— miles, all of which is managed, operated, and controlled by said defendants within the lands of said ranch so located in Los Angeles County; that there is no public road of any kind or character whatever within —— miles of the Ventura County end of said ranch, and the only means of egress and ingress to the westerly terminus of said proposed road is by private trails and ways; that said proposed road or highway, if condemned, would be located wholly and solely upon that part of the Malibu ranch situated in Los Angeles County and would end and terminate upon private property of the Rindge Company at the Ventura County line, and as constructed would give access wholly and solely to the private ranch property of

defendants May K. Rindge and Rindge Company, and could not furnish any way of necessity or convenience to the general public; that the owners of said ranch have no need or desire for a public road thereon, which, if constructed, would be a constant menace and damage to their ranch property; by reason of which facts it is alleged the taking of said property for the purpose contemplated would be without necessity of any kind or right. Upon the grounds and for the reason that all of the matter so alleged as a separate defense was irrelevant, immaterial, surplusage, and conclusions of law, plaintiff moved to strike the same from the answer. This motion was granted, and appellants assign the ruling as error. Counsel for appellants insist the special defense so pleaded was upon the theory that an isolated road within the boundaries of what is practically one property and not desired by the owners thereof and which could afford no real service to any part of the public as a road, could not possibly be a public necessity for which condemnation would lie. While this contention is fully answered by the fact that the resolution was conclusive evidence of the taking being necessary, nevertheless, conceding such theory warranted by the alleged facts, it appears that every material issue tendered by the so-called separate defense was not only raised by the complaint and the answers thereto, but that in the trial thereof defendant, without objection or restriction, was accorded every opportunity, of which it availed itself, in offering evidence touching every matter contained in the pleading so stricken out by order of the court. There was no error in the ruling, but conceding as much, it is impossible to perceive how defendants, under the circumstances, could have suffered any prejudice by reason thereof.

[8] It appears that while the eastern terminus of the main road connected with a public highway, the western terminus thereof was at the boundary line separating Los Angeles County from Ventura County, at which point it connected with no road extending into or connecting with roads in said last-named county, and that the Alisos Canyon road, likewise extending from the proposed main road to the boundary line common to the Malibu ranch and the lands of one Decker, was not connected with a highway; and basing their contention upon these facts, appellants insist

that the board of supervisors had no power to lay out highways terminating at county lines or points on private lands which did not connect with or intersect other highways affording means of continuous travel. There is no merit in this contention. No such restrictions upon the power of counties to establish highways are imposed by statute, and to hold that a county could not condemn lands for a highway to the line of another county unless there existed an established highway in such latter county with which to connect its proposed road would obviously lead to embarrassment and difficulty in establishing highways from one county to another. (*Rice* v. *Rindge*, 53 N. H. 530.)

The use for which the property was sought to be condemned is declared by section 1239 of the Code of Civil Procedure to be a public use. The resolution adopted by a vote of two-thirds of the members of the board of supervisors not only vested the court with jurisdiction of the proceedings for condemnation, but when received in evidence the finding and determination of the board as therein expressed, to the effect that the taking of the parcel of land described in the complaint was necessary for such public use and the proposed improvement located in the manner most compatible with the greatest public good and least private injury, was conclusive evidence of such facts; hence, while not prejudicial, any evidence touching such issue of necessity of hearings had before the board of supervisors other than the resolution was immaterial. In no event, and from whatever angle the facts are viewed, are we able to perceive how defendants' substantial rights were prejudiced by any ruling of the court during the trial.

The judgments and orders are affirmed.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 8, 1921.

All the Justices concurred except Angellotti, C. J., and Wilbur, J., who were absent.