[Civ. No. 9366. First Appellate District, Division One.—January 21, 1935.]

FREDERICK PATEK, Appellant, v. CALIFORNIA COTTON MILLS (a Corporation), Respondent.

Goldman & Altman for Appellant.

Philip S. Ehrlich and Conrad Louis Gardner for Respondent.

McNUTT, J., *pro tem.*—The plaintiff, a stockholder who had paid his proportionate share of defendant corporation's debt, brought suit against the corporation under section 322a of the Civil Code to recover the amount thereof. Demurrer to his complaint having been sustained, he stood thereon and appeals from the consequent judgment.

Article XII, section 3, of the Constitution, and section 322 of the Civil Code, established stockholders' liability; November 4, 1930, said section 3 was repealed and at the same time section 1 of article XII was amended to give the legislature power to prescribe the rights and liabilities of stockholders; in August, 1931, the legislature adopted the general corporation law, repealed section 322 of the Civil Code, enacted section 280 of the Civil Code, to preserve

accrued liabilities, and contemporaneously enacted section 322a, which follows:

"Any shareholder who because of his proportionate stockholder's liability under statutes heretofore in effect and not in discharge of his obligation to pay the full consideration agreed to be paid for his shares, *has heretofor* made or shall hereafter make any payment in discharge in whole or in part of any debt or liability of the corporation shall be subrogated to the extent of such payment to the claim of the creditor against the corporation." (Italicized as in respondent's brief.)

The paying stockholder is not thereby subrogated to a creditor's right to pursue other stockholders.

The salient facts of the complaint are that between October 22, 1929, and July 16, 1930, and while defendant corporation was, as at all times, a solvent, going business concern, defendant became indebted to a bank for $700,000 borrowed money; that in *October, 1932,* the bank sued appellant (plaintiff below) for his proportionate stockholder's share of defendant (respondent) corporation's debt, recovered judgment *May 20, 1933,* in a sum of approximately $2,500, which the stockholder *paid May 22, 1933,* to said bank; that the whole sum borrowed remains unpaid except what the appellant stockholder paid; that appellant's stock was paid in full; that the payment was made in discharge, in part, of the debt and liability of respondent corporation to the bank and was made by appellant as a stockholder of respondent; that by virtue of the provisions of section 322a of the Civil Code plaintiff has been subrogated to the claim of the bank against the corporation to the extent of the sum paid by the stockholder, and that there is unpaid from the corporation to appellant the sum so paid.

Under respondent's general demurrer, it is urged that section 322a is unconstitutional as violative of the due process clauses of the Constitutions of the United States and of California, respectively, and of the contract and *ex post facto* clauses of said Constitutions; and further that the section is so indefinite and obscure as to make its meaning incapable of ascertainment; that it does not precribe any method to carry into effect the right of subrogation; that there can be no partial subrogation to an indivisible claim; and, finally, that the statute relied upon cannot be

constitutionally construed to create retrospectively the right of subrogation.

At page 2 of respondent's brief, we find: "The sole issue involved in this appeal is: 'Whether Section 322a of the Civil Code, in so far as it purports to be retroactive, is unconstitutional.'"

■ There is no constitutional inhibition against retrospective legislation merely upon the ground that it is such. (5 Cal. Jur., p. 747.) Respondent's criticisms of the statute in a constitutional aspect are: A. Section 322a impairs the obligation of contracts, respectively, between stockholder and the corporation; B. Between the creditor and the corporation; C. Between the creditor and the stockholder; D. Between the stockholders *inter se;* that section 322a is a deprivation of property without due process of law in that (a) it deprives the corporation of property, (b) the creditor of the corporation of property, (c) the stockholders of the corporation of property, without due process. It argues further that the right of *pro tanto* subrogation created by the section is unenforceable and for that reason void. Respondent contends that at common law *pro tanto* subrogation was not permitted; the cases cited in support thereof hold generally that a surety may not at law or in equity call for an assignment of the claim against his principal unless the entire debt of the corporation has been paid because *pro tanto* assignment or subrogation will not be allowed.

The record does not disclose the specific reason for the ruling on demurrer, but it should be observed that no one in whose behalf these constitutional questions are raised is a party, except the corporation, which would not appear to have a right to protect any but its own interests. (*Hooker* v. *Burr*, 137 Cal. 663 [70 Pac. 778, 99 Am. St. Rep. 17]; *Lindsay-Strathmore Irr. Dist.* v. *Wutchumna Water Co.,* 111 Cal. App. 688 [296 Pac. 933].)

■ Assuming that at common law *pro tanto* subrogation was not permitted, the legislature has changed the rule by the adoption of section 322a; the cases referred to in support of the rule contended for are those in which it was held that injury might come to the creditor by permitting the surety to exercise such right.

In *Columbia Finance & Trust Co.* v. *Kentucky Union R. Co.,* 60 Fed. 794, it is held that ''the payment of the whole debt for which the surety is liable is essential to subrogation. If the surety, upon making a partial payment, became entitled to subrogation *pro tanto,* and thereby became entitled to the position of an assignee of the property to the extent of such payment, it would operate to place such surety upon a footing of equality with the holders of the unpaid part of the debt, and, in case the property was *insufficient* to pay the remainder of the debt for which the guarantor was bound, the loss would logically fall *proportionately* upon the *creditor* and upon the *surety.* Such a result would be grossly inequitable.'' (Italics added.)

It is apparent that the rule just stated was adopted for the protection of the creditor. The complaint alleges that the corporation debtor is solvent; hence it must be assumed that it has property sufficient to pay its debts.

The argument that the statute is constitutional prospectively but not retrospectively is not clear; the stockholder pays his proportion of the debt by reason of a pre-existing statutory mandate. By the terms of section 322a the payment which gives the stockholder the right to reimbursement by subrogation to the creditor's claim against the corporation is a discharge, in whole or in part, of his statutory liability as a stockholder *by reason of statutes heretofore in effect.* That liability must have become fixed before the enactment of section 322a and while liability of stockholders existed. The section does not purport to provide for reimbursement of the stockholder for a payment he might make in discharge of a corporate debt by reason of a law which the legislature might pass because of powers conferred by article XII, section 1, of the Constitution as amended. The contractual aspect of relations of stockholder to corporation, to other stockholders and to creditor crystallized when the corporation incurred the debt, and at a time when no right to reimbursement existed—at least by statute. If permitting the paying stockholder to have reimbursement from the corporation is to violate the obligation of a contract, it would seem that the allowance of reimbursement and not the time that the stockholder made his payment (before or after the enactment of section 322a) should be the factor which violates the obligation of the contract

if the operative effect of the section is to violate the contract clauses of either Constitution. If before the passage of section 322a the creditor had had the right to collect its debt from both the corporation debtor and the stockholder rather than from either, it might complain either under the contract or due process clauses of the Constitution, if the stockholder were given the right to reimbursement. But the creditor has never been entitled to any more than the payment of his claim by the debtor or by the stockholder.

 Respondent contends that before the adoption of section 322a a stockholder had no right to reimbursement from the corporation, having paid his share of its debts, as his liability was a primary one and he did not occupy the position of a surety, citing *Trindade* v. *Atwater Canning etc. Co.*, (Cal. App.) 128 Pac. 756; *Morrow* v. *Superior Court*, 64 Cal. 383, 386 [1 Pac. 354]; *Long Beach Brick Co.* v. *de Dodson*, 104 Cal. App. 99 [285 Pac. 382]; *Sacramento Bank* v. *Pacific Bank*, 124 Cal. 147 [56 Pac. 787, 71 Am. St. Rep. 36, 45 L. R. A. 863]; 6 Cal. Jur., pp. 1036, 1037, sec. 413.

The crux of this case is not, did the stockholder have a right to reimbursement before the enactment of section 322a, but rather is he obligated by contract to pay a corporate debt for its benefit and not to seek reimbursement from the corporation. It does not follow, however, that because his obligation as a stockholder was primary and that he had no right to reimbursement that a statute giving him such right would necessarily violate the obligation of a contract between him and the corporation, the creditor or other stockholder. As the Constitution of California contained no provision which prohibited the legislature from passing laws for the relief of a stockholder who had paid a part of the corporate debt, the situation is that up to the enactment of section 322a there was merely an absence of the right to such reimbursement. Respondent has not pointed out how the contract between the stockholder and the corporation immunizes the corporation from the assertion of a claim by the stockholder for reimbursement. If a law giving a right of reimbursement is not forbidden by the Constitution, and the contract between the stockholder and the corporation contains no agreement on his part that he will not ask for reimbursement, or no provisions which

estop him to seek it, it cannot be said that, as a part of the obligation of the contract between him and the corporation, is a duty on the stockholder not to ask for reimbursement. Therefore the enactment of section 322a does not impair the obligation of any contract between the stockholder and the corporation, or take its property without due process of law. By virtue of the statute in question he asserts a right which he did not theretofore have.

The argument that the section in question impairs the obligation of a contract between the creditor and the corporation seems to be based upon the theory that the assets of the corporation constitute a trust fund for the creditors. This doctrine is not accepted in California. (*Dominguez Land Corp.* v. *Daugherty,* 196 Cal. 468 [238 Pac. 703]; *Rhode* v. *Dock-Hop Co.,* 184 Cal. 367 [194 Pac. 11, 12 A. L. R. 437]; *Fornaseri* v. *Cosmosart Realty etc. Corp.,* 96 Cal. App. 549 [274 Pac. 597]; *Delaney Producing & Refining Co.* v. *Crystal Petroleum Products Co.,* 88 Cal. App. 784 [264 Pac. 521].)

At page 479 [196 Cal.] in the case of *Dominguez Land Corp.* v. *Daugherty, supra,* the court says: " . . . even those assets to which the so-called trust-fund doctrine is applicable are not charged with any enforceable trust or with any equitable lien on behalf of any general creditor of the corporation, if it be a solvent, going concern; and that such creditors have no vested right of any nature whatever in or to the property of such a corporation."

The respondent corporation was at all times a solvent, going concern. The stockholder by paying a part of its debt has, in effect, increased its assets to the extent of such payment, and therefore the compulsory reimbursement by the corporation works no injury to the corporation. The cases cited by respondent lay down the rule that a stockholder had no right to subrogation (prior to the enactment of section 322a) because his liability was primary and not secondary, and that one who pays a debt which by law he is independently obligated to pay cannot invoke equitable subrogation. None holds, however, that the absence of the right of subrogation or a denial of the right to be subrogated to the creditor's claim grew out of any contractual agreement between the paying stockholder and either the corporation or the creditor thereof not to seek reimburse-

ment. Though the liability of a stockholder to a creditor is primary and not that of a surety, it does not logically follow that making such liability independent and primary was in exoneration or was exculpatory of the equally primary liability of the corporate debtor. The only effect of such quality of liability, so far as the relation of stockholder and corporation, or stockholder and creditor, is concerned, is that when either shall have paid the creditor, his claim to that extent is discharged. It is not a necessary legal consequence of such quality of his obligation, that he may not be legally authorized to seek reimbursement from the corporation. The evident object of the constitutional and statutory provisions now repealed was to render more secure the position of a creditor of a corporation rather than for the relief of the latter entity.

█ Respondent offers no authority to support the proposition that permissive reimbursement of a stockholder who has paid violates the obligation of contracts of stockholders *inter se.* It is alleged that the corporation is a solvent, going concern, from which fact it must be inferred, so far as concerns stockholders other than the one who has paid, that he, having added to the assets of the corporation by paying his share of the debt, has cast no burden upon them by accomplishing repayment thereof from the corporation. When he is given back that which he himself has added, he has taken from other stockholders nothing which he, by contract, agreed to pay for their benefit and not to seek return of.

·*Aronson & Co.* v. *Pearson,* 199 Cal. 286 [249 Pac. 188, 51 A. L. R. 1385], holds that the constitutional and statutory provisions relating to liability of stockholders are terms of the stockholder's subscription agreement as though set forth therein; that when he accepted his stock he offered to make payment to the extent of his liability to one who gave credit to the corporation during the period of his ownership; that during such time, the extension by anyone of credit to the corporation was an acceptance of the stockholder's offer to pay his liability, and that a completed contract came into being between him and the creditor of the company. While the court defines the liability of the stockholder to be direct and primary and enforceable against him independently of proceedings against the corporation,

it nevertheless observes that though rules relating to the liability of a guarantor are not applicable to stockholder's liability, the latter's obligation is in the nature of a continuing guarantee of payment of corporate debts. This case is no authority for the proposition that the stockholder has obligated himself by subscribing for stock not to ask reimbursement from the corporation whose debts he has in part paid, or that the stockholder was a guarantor of the liability of his fellow stockholders.

The holding that the complaint states a cause of action as against the corporation cannot do violence to the rights of either creditors of the corporation or of other stockholders.

Respondent invokes the rule of *Coombes* v. *Getz*, 285 U. S. 434 [52 Sup. Ct. 435, 76 L. Ed. 866], to support the view that section 322a impairs contract obligations. Section 3 of article XII of the state Constitution made directors of a corporation jointly and severally liable to creditors and stockholders for money misappropriated by corporate officers during the director's term of office. A bill was filed alleging misappropriation of moneys of the corporation by its officers; pending appeal to the Supreme Court from the judgment of the superior court on demurrer the above constitutional provision was repealed, and the Supreme Court of this state dismissed the appeal because of abatement of action by repeal. The United States Supreme Court reversed, holding that the director's liability was not purely statutory, but was contractual and that the repeal could not destroy or impair the previously vested right of the creditors. Section 322a does not take away the creditor's right to sue stockholders or the solvent corporate debtor, or both.

To illustrate by analogy: Every subscriber for stock agreed that the liability imposed by section 3, article XII, of the Constitution and section 322 of the Civil Code was a term and was of the obligation of his contract with the corporation. If as between him and it those provisions obligated the stockholder to pay the corporation's debts, the corporation had a vested right to have him pay such debts, and the repeal of those provisions violated the obligation of the subscription contract as to all debts incurred by the corporation after the stockholder received his certificate of stock. The repeal had no such effect beause the provisions

referred to were enacted for the benefit of the creditor and not for the benefit of the corporation. If, then, it cannot be successfully contended that the corporation had a vested right to have the terms which the law read into the contract remain static, how may it be said that the stockholder contracted not to seek reimbursement from the corporation when as between them the latter had no vested right to make him bear or share its burden? The means for the protection of their rights is available, namely, by intervention or other appropriate procedural method whereby issue could be joined as to the solvency of the corporation.

Respondent quotes 6A California Jurisprudence, page 1025, with reference to section 322a as follows: "This statute is prospective and gives a right which did not exist prior to 1931." If before the enactment of the statute he had no right to sue and by the statute he is given the right, of course the statute is prospective as concerns the right to go forward by suit, but it is not prospective or retrospective accordingly as he has paid after or before the passage of the statute, and in this instance he paid after.

The judgment is reversed with directions to overrule the demurrer.

Tyler, P. J., and Knight, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 21, 1935.